1   John L. Cooper (State Bar No. 050324)
    jcooper@fbm.com
2   Jeffrey M. Fisher (State Bar No. 155284)
    jfisher@fbm.com
3   Eugene Y. Mar (State Bar No. 227071)
    emar@fbm.com
4   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA  94104
    Telephone:  (415) 954-4400
6   Facsimile:  (415) 954-4480

7   Attorneys for Defendants
    TECHNOLOGY PROPERTIES LIMITED
8   and ALLIACENSE LIMITED

9   Charles T. Hoge, Esq. (State Bar No. 110696)
    choge@knlh.com
10  Kirby Noonan Lance & Hoge
    35 Tenth Avenue
11  San Diego, CA  92101
    Telephone:  (619) 231-8666
12  Facsimile:  (619) 231-9593

13  Attorneys for Defendant
    PATRIOT SCIENTIFIC CORPORATION

14

15                  UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                          SAN JOSE DIVISION

18  ACER, INC., ACER AMERICA                Case No.  5:08-cv-00877 JF
    CORPORATION and GATEWAY, INC.,
19                                          **DEFENDANTS' OPPOSITION TO ACER'S
                    Acer,                    MOTION TO ENTER PROTECTIVE
20          v.                               ORDER AND ALLOW ACER TO
                                             DISCLOSE PATENT L.R. 3-1 EXCHANGE**
21  TECHNOLOGY PROPERTIES
    LIMITED, PATRIOT SCIENTIFIC           Date:     April 14, 2009
22  CORPORATION, and ALLIACENSE          Time:     10:00 a.m.
    LIMITED,                             Dept.:    Courtroom 2, 5th Floor
23                                        Before:   The Honorable Howard Lloyd
                    Defendants.
24

25

26

27

28

23129\1896732.3

## TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................................................... 1

II.     ARGUMENT ................................................................................................................ 3

        A.      Acer's Proposed Paragraph 7.5 Would Improperly Allow Acer to
                Unilaterally Determine Whether Information Is Confidential and to Share
                Defendants' Competitively Sensitive, Proprietary Information With Third
                Parties. ................................................................................................................ 3

                1.      Acer's Proposed Provision Creates Unnecessary Risks that
                        Confidential Information Would Be Disclosed. ........................................ 3

                2.      Disclosure of the Preliminary Infringement Contentions to Third
                        Parties Would Competitively Harm Alliacense's Licensing
                        Program. .................................................................................................. 4

                3.      Acer's Justification for Seeking an Order to Disclose Defendants'
                        Preliminary Infringement Contentions to Third Parties Is Misplaced
                        Because Acer Was Required To Have a Good Faith Basis to Bring
                        this Declaratory Judgment Action Against the Defendants And Is
                        Free To Discuss Its Non-Infringement Arguments With Third
                        Parties ..................................................................................................... 8

        B.      The Engineers Designated in Defendants' Motion, Divya Madhyasta and
                Torsten Partsch, Are Necessary to Defendants' Case And Present Minimal
                Risk of Inadvertent Disclosure Because They Are Not Involved in
                Competitive Decisionmaking. ............................................................................ 10

III.    CONCLUSION ............................................................................................................ 12

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER
Case No. 5:08-cv-00877 JF

i

23129\1896732.3

TABLE OF AUTHORITIES

**FEDERAL CASES**

*In re Adobe Systems, Inc. Securities Litigation*,
    141 F.R.D. 155, 161 (N.D. Cal. 1992) ........................................................................... 5, 7

*Brown Bag Software v. Symantec Corp.*,
    960 F.2d 1465 (9th Cir. 1992)................................................................................... 3, 11

*City Solutions, Inc. v. Clear Communications, Inc.*
    365 F.3d 835, 842-43 (9th Cir. 2004) ............................................................................... 7

*MGP Ingredients v. Mars, Inc.*,
    245 F.R.D. 497 (D. Kans. 2007) ...................................................................................... 10

*Micromesh Tech. Corp. v. America Rec. Products*,
    2007 U.S. Dist. LEXIS 64241 (N.D. Cal. Aug. 29, 2007)................................................. 8

*Pharmachemie v. Pharmacia, Inc.*,
    1998 U.S. Dist. LEXIS 2192 (D. Mass. Jan. 30, 1998) .................................................. 10

*Refac International, Ltd. v. Hitachi Ltd.*,
    141 F.R.D. 281 (C.D. Cal. 1991) ................................................................................. 8, 9

*In Re Reporters' Committee*,
    773 F.2d 1325 (D.C. Cir. 1985) ....................................................................................... 5

*Sorenson v. Riffo*,
    2008 U.S. Dist. LEXIS 57866 (D. Utah July 30, 2008)............................................. 5, 6, 7

*View Engineering, Inc. v. Robotic Vision System, Inc.*,
    208 F.3d 981 (Fed. Cir. 2000)......................................................................................... 8

**FEDERAL STATUTES**

Fed. R. Civ. P. 26(c)..................................................................................................................... 4

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA 94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER
Case No. 5:08-cv-00877 JF

ii

23129\1896732.3

1    **I.      INTRODUCTION**

2            Defendants Technology Properties Limited ("TPL"), Patriot Scientific Corporation, and

3    Alliacense Limited (collectively "Defendants") and Plaintiffs Acer, Inc., Acer America Corp.,

4    and Gateway Inc. (collectively "Acer") require the Court's assistance in connection with two

5    provisions of a proposed stipulated protective order in this action.

6            First, Acer has moved for the insertion of a proposed paragraph 7.5 entitled "Treatment of

7    Party or Third-Party's Own Information or Analyses of Own Information."  *See* Mar Decl. In

8    Support of Defendants' Motion for a Protective Order, Docket No. 106, Ex. B at ¶ 7.5.  Nothing

9    remotely resembling such a provision is included in the Northern District model protective order.

10   This proposed provision would give Acer an unfettered ability to disseminate to undisclosed third

11   parties any TPL-designated confidential documents simply because Acer perceives these

12   documents to be derivatives, analyses, or summaries of Acer's confidential documents.  This

13   proposal would also circumvent procedures already in place in the model protective order for

14   challenging confidentiality designations, whereby the parties must first meet and confer to resolve

15   these disputes and seek judicial intervention, if necessary.  *See id.*, Ex. A, at ¶¶ 6.1-6.3.

16           Indeed, although Acer claims in its Motion to Enter Protective Order and Allow Plaintiffs

17   to Disclose Patent L.R. 3-1 Exchange, Docket No. 102 ("Acer's Motion"), that the information it

18   intends to disseminate pursuant to paragraph 7.5 relates to Defendants' infringement contentions,

19   the actual proposed language goes far beyond that.  The proposed provision is so ambiguous and

20   overbroad that it sweeps in another party's work product ("nothing herein shall restrict a party …

21   from having access to portions of any derivatives, … reports, analyses, summaries [or]

22   characterizations … that refer to the designated materials that the party has produced in

23   discovery").  Acer's provision would also give the parties full discretion (not subject to any

24   restrictions or safeguards) to share with any "third party" information that "appears to be from or

25   belong to that third-party or any derivatives, abstracts, briefs, memoranda, reports, analyses,

26   summaries, characterizations or testimony that refer to that third-party's information."  Docket

27   No. 106, Ex. B at ¶ 7.5.  Notably, there are no restrictions whatsoever on what these "third

28

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER
Case No. 5:08-cv-00877 JF

23129\1896732.3

1    parties" can do once they have received the documents from Acer, so it is likely that this

2    information would become publicly available.

3         Acer's contention that it needs to disclose claim charts to unspecified "third parties"

4    because it does not know how its own products work is wholly unsupported and, if true, casts

5    doubt on Acer's good faith in bringing this declaratory relief action in the first place.

6    Presumably, Acer had a good faith basis to assert that it does not infringe any valid claims of the

7    patents-in-suit when it filed the declaratory judgment complaint in this case, and TPL is entitled

8    to know Acer's contentions in this regard.[1]  More fundamentally, Acer is free to communicate

9    with its manufacturers to develop its defenses – it simply cannot share TPL's confidential

10   information with third parties in doing so.  Accordingly, the Court should refuse to adopt Acer's

11   proposed paragraph 7.5.

12        The second dispute deals with Defendants' request to include language that modifies

13   Section 7.3(b) in the model protective order to allow two Alliacense engineers—Divya

14   Madhyasta and Torsten Partsch—access to Acer's highly confidential materials.  Madhyasta and

15   Partsch are primarily responsible for conducting the necessary technical analysis in support of this

16   patent litigation and working with Defendants' outside counsel in connection with this litigation.

17   Madhyasta and Partsch have unique technical expertise based on their years of experience with

18   the field of technology described in the patents-in-suit.  These engineers must have access to

19   Acer's highly confidential materials to lend their knowledge and skills to the technical analysis

20   necessary to the efficient management and resolution of this case.

21        While Acer's proposed paragraph 7.5 does not include any obligation to preserve the

22   Defendants' confidential information or even identify the potential recipients of the infringement

23   contentions, Defendants have specifically identified the two Alliacense engineers who request

24   access to Acer's highly confidential information and who have volunteered to execute strict

25   acknowledgments of the protective order that prohibit their ability to use, share or communicate

26   the substance of Acer's highly confidential materials with anyone who prosecutes patents or

27

28

---

[1] Defendants have served interrogatories on the Plaintiffs seeking the bases for their non-infringement and invalidity contentions set forth in the First Amended Complaint for Declaratory Judgment.

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA 94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER                    2
Case No. 5:08-cv-00877 JF

23129\1896732.3

1    develops products.  *See* Docket No. 106, Ex. A at Ex. B [Acknowledgment and Agreement to be

2    Bound re: Employees of Alliacense].  Precluding Madhyasta and Partsch from having access to

3    Acer's highly confidential materials would severely prejudice Defendants' ability to efficiently

4    prosecute their case.  In contrast, there is minimal risk that there would be any inadvertent

5    disclosure of confidential information, particularly in light of the strict acknowledgments the

6    engineers are willing to make under oath.  They do not participate in the development of products

7    or prosecution of new patents, and they are not competitive decision makers under the Ninth

8    Circuit precedent in *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.

9    1992).  Accordingly, the Court should adopt Defendants' proposed protective order (attached as

10   Ex. A to Docket No. 106), which includes the slightly modified paragraph 7.3(b) and the

11   Acknowledgment to be Bound re: Employees of Alliacense.

12   **II.   ARGUMENT**

13       **A.   Acer's Proposed Paragraph 7.5 Would Improperly Allow Acer to Unilaterally
14           Determine Whether Information Is Confidential and to Share Defendants'
             Competitively Sensitive, Proprietary Information With Third Parties.**

15            1.   Acer's Proposed Provision Creates Unnecessary Risks that Confidential
16                 Information Would Be Disclosed.

17            During the meet-and-confer process, the parties agreed to most of the terms found in the

18   Northern District model Protective Order, including paragraphs 6.1-6.3, which sets forth a meet-

19   and-confer process followed by judicial intervention, if necessary, for a party to challenge the

20   confidentiality designations of the other party.  Acer has, nonetheless, proposed paragraph 7.5

21   entitled "Treatment of Party or Third-Party's Own Information Or Analyses of Own

22   Information," which circumvents the procedural safeguards agreed upon by the parties and,

23   instead, gives Acer unfettered discretion to determine whether information produced by TPL

24   could be disseminated to other companies or even made available publicly.

25            Acer's proposed paragraph 7.5 states that "Nothing herein shall restrict a party with

26   respect to the treatment and handling of its own information of any derivatives, abstracts, briefs,

27   memoranda, reports, analyses, summaries, characterizations or testimony that refer to a party's

28   own information." *Id.* at ¶ 7.5.  This provision would allow Acer to unilaterally determine,

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER
Case No. 5:08-cv-00877 JF

3

23129\1896732.3

1   without ever notifying TPL, if a document "refer[s] to [its] own information," and would give

2   Acer free reign to then distribute any document that it so determines as being derivative of its

3   own information.  Acer's proposal leaves TPL without recourse to intervene or object if Acer

4   decides to share a TPL-designated confidential document with a third party.

5          Moreover, Acer's proposed section 7.5 creates substantial risk of TPL's confidential and

6   proprietary information being disclosed to other companies not involved in this litigation with no

7   obligation whatsoever to maintain the information as confidential.  Acer's request to disclose

8   Defendants' Preliminary Infringement Contentions to "third parties" exemplifies the risk

9   associated with Acer's proposed addition.  The Preliminary Infringement Contentions contain

10  Product Charts that were first developed by Alliacense engineers prior to the commencement of

11  this litigation.  The Product Charts, prepared as part of Alliacense's licensing program, include

12  proprietary, confidential technical analysis and reverse engineering results compiled by

13  Alliacense engineers.  Acer's proposed provision would allow Acer to independently decide that

14  the infringement contentions only contain its own confidential information and that Acer could

15  share the document with whomever it pleases without ever consulting with TPL.  If the Product

16  Charts found in Preliminary Infringement Contentions are disseminated to companies other than

17  Acer and Gateway, many of these companies, which include prospective licensees, will use this

18  confidential information to delay their licensing negotiations with Alliacense, demand lower

19  royalty rates, or refuse to enter into a licensing agreement at all.  The risk of competitive harm to

20  Alliacense's licensing program justifies the need for the parties to keep this information

21  confidential.

22              2.     Disclosure of the Preliminary Infringement Contentions to Third Parties
                       Would Competitively Harm Alliacense's Licensing Program.
23

24         As Acer acknowledges, Federal Rule 26(c) and the Northern District model protective

25  order contemplate confidentiality of trade secrets ***and other confidential commercial***

26  ***information***.  Fed. R. Civ. P. 26(c) (emphasis added).[2]  Additionally, courts have granted

27

28  _____

    [2] Contrary to Acer's unsupported assertion, Defendants have never claimed that their
    infringement contentions constituted a trade secret.

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER                    4
Case No. 5:08-cv-00877 JF

23129\1896732.3

1  protective orders protecting information that would harm a party's competitive standing or put a

2  party at a competitive disadvantage were the information to become public.  In *In Re Adobe*

3  *Systems, Inc. Securities Litigation*, the Northern District of California entered a protective order

4  which covered "analysis of competitors."  141 F.R.D. 155, 161 (N.D. Cal. 1992).  There, the

5  Court granted a protective order keeping information about competitors confidential when the

6  "information would, if revealed to a competitor, put a company at a competitive disadvantage."

7  *Id.* at 161 (citing *In Re Reporters' Committee*, 773 F.2d 1325, 1333 (D.C. Cir. 1985) ("Courts

8  have refused to permit their files to serve . . . as sources of business information that might harm a

9  litigant's competitive standing.")).  The information at issue in *Adobe* included "information

10  about NEC's evaluation of its competitor's products *vis-a-vis* NEC products."  *Id.* at 162.

11  Similarly, in *Sorenson v. Riffo*, 2008 U.S. Dist. Lexis 57866, at *25 (D. Utah July 30, 2008), the

12  court agreed to amend a stipulated protective order to include a clause making "competitive

13  technical information, including technical analyses or comparisons of competitor's products"

14  "CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY."

15          Here, Acer's request to disclose the Preliminary Infringement Contentions to undisclosed

16  "third parties" would harm Defendant Alliacense's licensing program.  Alliacense is responsible

17  for the licensing and enforcement of the patents-in-suit.  *See* Leckrone Decl. at ¶ 2.  Alliacense

18  offers a "tiered" pricing structure for its licenses to the Moore microprocessor patent ("MMP")

19  portfolio, which includes the patents-in-suit.  *Id.* at ¶ 3.  This pricing structure rewards early

20  movers with lower royalty rates.  *Id.*  These licenses typically exclude third parties such as

21  component vendors and other indirectly related third parties.  *Id.*  To date, over 50 companies

22  have executed license agreements with Alliacense for the MMP portfolio.  *Id.* at ¶ 2.  Currently,

23  Alliacense is involved in ongoing discussions with companies in various industries, including

24  companies known to supply components to Acer or partner with Acer, about licensing the MMP

25  portfolio.  *Id.* at ¶ 3 & ¶ 7.

26          To help facilitate these discussions, Alliacense prepares and provides detailed "Product

27  Charts" to prospective licensees to demonstrate how strategically significant product lines

28  practice the inventions in the MMP portfolio.  *Id.* at ¶ 4.  These Product Reports, prepared outside

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER
Case No. 5:08-cv-00877 JF                                    5                                    23129\1896732.3

1    the context of litigation and as part of Alliacense's licensing efforts, depict the technical analysis,

2    including significant reverse engineering work, conducted by Alliacense engineers that is

3    confidential and proprietary. *Id.* They include competitively sensitive, proprietary information

4    such as the business analysis and selection of strategically significant products, the compilation of

5    technical references and data used to support the analytical work, and the reverse engineering

6    purchased by and/or conducted by Alliacense engineers. *Id.* at ¶ 6. Alliacense invests significant

7    financial and human resources in the long sales cycles associated with this licensing business

8    model. *Id.* The companies to which Acer seeks to share these Product Charts would pay

9    substantial consideration to develop or purchase comparable information. *Id.* at ¶ 7. The Product

10   Reports are a critical component of Alliacense's licensing model, and prospective licensees

11   frequently compliment the detail, breadth, and organization of the Product Charts during the

12   licensing negotiations. *Id.* at ¶ 4.

13        Many of the prospective licensees operate in highly competitive industries. *Id.* at ¶ 3. As

14   a result, the licensing discussions with prospective licensees must be conducted on a confidential

15   basis to prevent Alliacense's competitively sensitive information from being disseminated to

16   other prospective licensees or indirectly related third parties who supply components or partner

17   with prospective licensees. *Id.* The Product Charts are stamped with "confidential" on every

18   page to ensure that the information is treated as confidential by the recipients of the information.

19   *Id.* at ¶ 5.

20        In connection with its Preliminary Infringement Contentions in this action, Defendants

21   attached Product Charts created by Alliacense that cover Acer and Gateway product lines. If

22   Acer was suddenly free to share the content of the Product Reports with unidentified vendors or

23   partners of its own choosing, some of whom are prospective licensees or companies known to be

24   supporting the negotiating efforts of other potential licensees, these companies would use the

25   content of the Product Charts to coordinate their responses and strategies in an effort to block and

26   harm Alliacense's licensing program in a coordinated refusal to deal. *Id.* at ¶ 7. Instead of

27   analyzing whether its products need a license to the MMP portfolio, prospective licensees would

28   be able to "compare notes" concerning the technical analysis found in the Product Charts.

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER                    6
Case No. 5:08-cv-00877 JF

23129\1896732.3

1    Disclosing the infringement contentions would permit potential licensees to prolong licensing

2    negotiations by allowing prospective licensees to circulate Alliacense's work product and

3    facilitate endless debates concerning the details of Alliacense's infringement analysis, the scope

4    of another company's potential license, and non-infringement arguments related to another

5    company's products. *Id.* at ¶ 6. This information could even wind up on the Internet. *Id.* at ¶ 7.

6    Prospective licensees will leverage these negotiation tactics to try and avoid Alliacense's tiered

7    pricing structure and seek lower royalty rates. *Id.* at ¶ 6. In addition, if Acer is allowed to

8    disseminate the Product Charts to "third parties," the cost of enforcing and licensing the MMP

9    portfolio will exponentially rise as Alliacense representatives will have to litigate the merits of its

10   infringement contentions with every prospective licensee. This very notion—that information is

11   competitively valuable by virtue of it being confidential without being a trade secret and that a

12   company can be harmed if this information is used by unintended recipients—has been

13   recognized by the Ninth Circuit in *City Solutions, Inc. v. Clear Communications, Inc.*, which

14   upheld a finding of unfair competition against a company who accessed and misused the

15   plaintiff's confidential bidding strategy in winning a bid for providing newspaper racks. 365 F.3d

16   835, 842-43 (9th Cir. 2004).

17        Similar to the information at issue in *Adobe*, Defendants' Product Charts reveal their

18   infringement analysis *vis-a-vis* their patents, and would put Defendants at a disadvantage in future

19   licensing negotiations were their thought processes to be publicly disclosed. *See Adobe*, 141

20   F.R.D. at 161. Disclosure of the Product Charts attached to the Preliminary Infringement

21   Contentions would put Defendants at the type of competitive disadvantage envisioned in *Adobe*,

22   damaging licensing negotiations and potentially aiding a collective refusal to deal among

23   potential licensees. The Product Charts in the Preliminary Infringement Contentions that Acer

24   wishes to share with prospective licensees (rather than third party experts or consultants are not

25   "mere summaries or analyses of another person's information," but Defendants' proprietary and

26   confidential work revealing their internal thought processes, which if widely disseminated would

27   put Defendants at a competitive disadvantage in future licensing efforts. Leckrone Decl. at ¶¶ 4,

28   6-7.

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER
Case No. 5:08-cv-00877 JF

7

23129\1896732.3

3.   Acer's Justification for Seeking an Order to Disclose Defendants'
Preliminary Infringement Contentions to Third Parties Is Misplaced
Because Acer Was Required to Have a Good Faith Basis to Bring This
Declaratory Judgment Action Against the Defendants And Is Free To
Discuss Its Non-Infringement Arguments With Third Parties.

When Acer filed this declaratory judgment action in February 2008, Acer claimed that it did not infringe any valid claims of the '584, '749, and '336 patents. Docket No. 1. As early as July 2008, Acer sought to add the '148 and '890 patents to this case, culminating with the filing of their First Amended Complaint for Declaratory Judgment in February 2009. Docket No. 98. As such, Acer was required to have investigated its claims – and know the basis for its noninfringement arguments – *before* bringing suit. The law is clear that a plaintiff must conduct a reasonable pre-filing investigation on its claims. *See Micromesh Tech. Corp. v. Am. Rec. Prods.*, 2007 U.S. Dist. LEXIS 64241 (N.D. Cal. Aug. 29, 2007) (finding that Plaintiff failed to conduct a good faith comparison between the patent and the accused products before filing suit); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (finding inadequate a pre-filing investigation that included only an analysis of the competitor's advertising and the attorney's knowledge of the patents held, and placing great emphasis on the lack of an infringement analysis prior to filing the claims); *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 286-88 (C.D. Cal. 1991) (imposing sanctions on patent infringement plaintiff that failed to examine accused products prior to filing complaint). Given this pre-filing obligation, Acer's stated justification for disclosing the Defendants' Preliminary Infringement Contentions are unfounded and do not override the potential risk to Alliacense's competitive interests.

First, Acer states without any support that it needs to share the infringement contentions "in order to further understand the operation of the accused microprocessor." Acer's Motion at 7:2-3. It defies credulity to think that Acer and Gateway – two of the largest computer companies in the world – do not understand the operation of the microprocessors used in their products. More fundamentally, Acer does not need to share Defendants' infringement contentions with third parties to determine how the microprocessors used in Acer's products operate. Nothing prevents Acer from inquiring and receiving information from its suppliers about how the

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER                8
Case No. 5:08-cv-00877 JF

23129\1896732.3

microprocessors operate.  Indeed, Acer should have already done this when it filed its original

and amended complaints for declaratory judgment.

Second, Acer claims that it needs to share the contentions in order to "determine whether

there are non-infringement defenses to TPL/Patriot's allegations" and "investigate potential prior

art." *Id.* at 7:3-4.  Nonsense.  The patents-in-suit are, as Acer point out (*Id.* at 6:4-20), a matter of

public record, and Defendants are not claiming that the asserted claims or accused products are

confidential.  Acer and its suppliers are free to analyze how the asserted claims of the patents-in-

suit read on their products and investigate whether prior art exist.  Acer does not need to share

Defendants' Product Charts with third parties to conduct these analyses.  Acer is also free to work

with its own consultants, experts, or in-house technical personnel under the Defendants' proposed

protective order to analyze the Defendants' infringement contentions and further assess its

defenses.  Indeed, Acer has not listed any witnesses from its third party suppliers on its initial

disclosures, establishing that Acer does not believe it needs any of the witnesses from its

suppliers to assist with its defenses in this case.  Mar Opp. Decl.[3] Ex. A [Initial Disclosures].

Similarly, Acer has not demonstrated how the sharing of the infringement contentions relates to

any potential defenses under patent exhaustion or laches.

Third, Acer argues that Patent Local Rule 2-4 "explicitly contemplates that the

Infringement Disclosures are not 'confidential' as they are admissible in any proceeding."  Acer's

Motion at 9:9-12.  Acer's position confuses the standards for admissibility governed by the

Federal Rules of Evidence with the rules regarding confidentiality.  As the Court is well aware,

many confidential documents are admitted as evidence in patent cases; thus, there is no

connection between the confidentiality of a document and its admissibility under the law.

Acer also argues, without any factual support, that it needs to disclose the infringement

contentions to seek indemnification from its manufacturers.  However, that level of detail is not

required for indemnification purposes, as the pleading that accompanied the infringement

contentions, listing the identity of the accused products and the asserted claims, should be more

---

[3] "Mar Opp. Decl." refers to Declaration of Eugene Y. Mar in support of Defendants' Opposition
to Acer's Motion for Protective Order.

than sufficient for Acer to trigger its indemnification obligations from its suppliers.[4]  Mar Opp.

Decl. Exs. B & C.  Acer has made no showing to the contrary.

### B.  The Engineers Designated in Defendants' Motion, Divya Madhyasta and Torsten Partsch, Are Necessary to Defendants' Case And Present Minimal Risk of Inadvertent Disclosure Because They Are Not Involved in Competitive Decisionmaking.

Defendants' Motion for Entry of a Protective Order ("Defendants' Motion") and the

accompanying declarations of Madhyasta and Partsch made clear that Madhyasta and Partsch

have specialized knowledge which makes them critical to Defendants' ability to litigate the case.

Docket Nos. 105, 107-108.  Party technical employees with particularized knowledge can be

granted access to confidential documents if the party's necessity of having those employees able

to view the documents outweighs the risk of inadvertent disclosure.  *See Pharmachemie v.*

*Pharmacia, Inc.*, Case No. 95-40085-NMG, 1998 U.S. Dist. LEXIS 2192, at *7-8 (D. Mass. Jan.

30, 1998) (granting a Pharmachemie in-house technical employee access to confidential

materials, and stating that "Protective Orders in most patent cases allow corporate technical

employees, including support staff, to have access to 'confidential' information" and that "[i]t

would be very difficult for Pharmachemie to prosecute this patent case without having the ability

to consult one of its technical employees to assist counsel by evaluating 'confidential'

information produced by Pharmacia."); *see also MGP Ingredients v. Mars, Inc.*, 245 F.R.D. 497,

501-502 (D. Kans. 2007) (upholding a magistrate judge's ruling permitting in-house scientists to

have access to confidential materials from the other party).  Giving Madhayasta and Partsch

access to Acer's highly confidential materials will increase the efficiency and lessen the costs

associated with enforcing the patents-in-suit while presenting minimal, if any, risk to Acer of any

inadvertent disclosure that could create any competitive harm given that Madhayasta and Partsch

---

[4] In an effort to meet Acer in the middle, Defendants inquired in the days preceding the filing of the opening motions whether Acer would be willing to narrow its proposed paragraph 7.5 and what, if any, confidentiality agreement Acer would be willing to enter into with the companies it wishes to share the preliminary infringement contentions with in order to preserve Defendants' confidentiality interests in their infringement contentions.  Docket No. 106 at ¶ 4.  Acer declined to explore this route, insisting on a full de-designation of the infringement contentions.  *Id.*

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER                    10
Case No. 5:08-cv-00877 JF

23129\1896732.3

1    will sign the acknowledgement subjecting them to the Court's jurisdiction and requiring that they

2    not share the information with anyone who develops products or prosecutes patents.

3         Partsch's position within Alliacense is to assist with evaluation and development of

4    litigation strategy.  He is an electrical engineer with considerable specialized experience with

5    memory chips with 37 U.S. Patents to his name in the field of memory chip technology, including

6    chip architecture and chip interfaces with DRAM memory.  Declaration of Torsten Partsch ISO

7    Defendants' Motion for a Protective Order ("Partsch Decl."), Docket No. 107, ¶¶ 3-5.  Divya

8    Madhyasta similarly holds a position at Alliacense where she is involved in performing technical

9    analyses related to the technology at issue in this litigation.  Declaration of Divya Madhyasta ISO

10   Defendants' Motion for a Protective Order ("Madhyasta Decl."), Docket No. 108, ¶¶ 2-4.  Both

11   in-house engineers have specialized technical knowledge that uniquely qualifies them to assist in

12   infringement analysis in this case.

13        Defendants' motion and the accompanying declarations also make clear that the risk of

14   inadvertent disclosure is low.  Madhyasta and Partsch are not involved in "competitive decision-

15   making" as defined by *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.

16   1992), as they are not involved in making pricing decisions, prosecuting patents, or designing

17   products.  *See* Declarations of Torsten Partsch and Divya Madhyasta in Support of Defendants'

18   Motion for a Protective Order, Docket No. 107 at ¶ 6 and No. 108, at ¶ 5.  Acer incorrectly state

19   that disclosing information to Defendants' in-house employees exposes it to danger because

20   TPL/Patriot have at least one competing product, and disclosure of confidential information to

21   them would give TPL/Patriot a competitive advantage.  Acer's Motion at 10:15-18.[5]  The

22   designated engineers are solely employed by Alliacense, a distinct entity that handles the

23   licensing and enforcement of the patents-in-suit, and are not employed by Technology Properties

24   Limited ("TPL").  *See* Docket 107 [Partsch Decl.] ¶ 1 & Docket 108 [Madhyasta Decl.] ¶ 1.

25   Technology Properties Limited is the corporate entity responsible for developing products that

26   embody the patents-in-suit, not Alliacense.  Thus, Alliacense does not manufacture any products

27

28

---

[5] Acer also focuses many arguments on whether Mac Leckrone should be allowed access.  These arguments are moot, as, in the spirit of compromise, Defendants are not requesting that Mr. Leckrone be granted access.

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER
Case No. 5:08-cv-00877 JF

11

23129\1896732.3

1   and does not compete with Acer in the product marketplace.  Leckrone Decl. at ¶ 2.  As a result,

2   Partsch and Madhyasta do not participate in the development or design of any products.  *See*

3   Docket 107 [Partsch Decl.] ¶ 6 & Docket 108 [Madhyasta Decl.] ¶ 5.

4          To further assuage Acer's confidentiality concerns, Partsch and Madhyasta are willing to

5   execute a strict acknowledgment under the penalty of perjury that prevents them from disclosing

6   any highly confidential Acer information to any member, director, or officer of TPL.  *See* Docket

7   No. 107 [Partsch Decl.] ¶ 7 & Docket No. 108 [Madhyasta Decl.] ¶ 6; *see also* Docket No. 106

8   [Mar Decl. ISO Defendants' Motion for Protective Order] at Ex. A [Acknowledgment to be

9   Bound re: Employee of Alliacense].  Compared to Acer's refusal to undertake any obligation or

10  measures to preserve TPL's confidential infringement contentions prior to sharing them with third

11  parties, Partsch and Madhyasta's willingness to sign the above-described strict acknowledgment

12  establishes more-than-adequate protections for Acer's confidentiality interests while still

13  honoring the Defendants' interest in efficiently prosecuting this case.  Acer is mistaken about the

14  risk that would occur if these two employees were granted access when the risk is in fact minimal

15  or non-existent.  On balance, Defendants' need for the engineers' access outweighs this very

16  minimal risk.

## III.   CONCLUSION

17

18         For the reasons set forth above, Defendants respectfully request that the Court preclude

19  Acer from inserting its proposed paragraph 7.5 into the parties' protective order.  Defendants also

20  respectfully request that the Court enter the Defendants' protective order that allows for

21  disclosure, subject to a strict acknowledgement, of Acer's highly confidential materials to

22  Alliacense in-house engineers Partsch and Madhyasta.

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER
Case No. 5:08-cv-00877 JF                    12                    23129\1896732.3

1

2

3    Dated: March 24, 2009                        FARELLA BRAUN & MARTEL LLP

     I represent that concurrence in the filing of this
     document has been obtained from each of the
4    other signatories which shall serve in lieu of        By:_____/s/ John L. Cooper_____
     their signatures on this document.                         John L. Cooper

5                                                 Attorneys for Defendants
                                                  TECHNOLOGY PROPERTIES
6                                                 LIMITED and ALLIACENSE LIMITED

7
     Dated: March 24, 2009
8                                                 KIRBY NOONAN LANCE & HOGE, LLP

9

10                                                By:_____/s/ Charles T. Hoge_____
                                                       Charles T. Hoge
11
                                                  Attorneys for Defendant
12
                                                  PATRIOT SCIENTIFIC CORPORATION
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO MOTION
TO ENTER PROTECTIVE ORDER                    13
Case No. 5:08-cv-00877 JF                                                                 23129\1896732.3