*e-filed 5/14/09*

NOT FOR CITATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACER, INC., ACER AMERICA CORPORATION, GATEWAY, INC., <br><br> Plaintiffs, <br> v. <br><br> TECHNOLOGY PROPERTIES, PATRIOT SCIENTIFIC CORPORATION, ALLIACENSE LIMITED, <br><br> Defendants. | No. C08-00877 JF (HRL) <br> Related case Nos. 08-00882-JF, 08-00884-JF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER; DENYING DEFENDANTS' MOTION FOR ENTRY OF PROTECTIVE ORDER** <br><br> **[Re: Docket No. 102, 105]** |

**INTRODUCTION**

Plaintiffs Acer, Inc., Acer America Corporation and Gateway, Inc. sell products that contain microprocessors manufactured and supplied by others. Defendants Alliacense Limited, Technology Properties Limited, and Patriot Scientific Corporation claim co-ownership of certain patents known as Moore's Microprocessor Patent Portfolio ("MMP"). Defendants assert that the third party supplied microprocessors in plaintiffs' products infringe the MMP. Plaintiffs filed this declaratory judgment action, seeking to establish that they do not. Defendants submitted voluminous documentation in purported compliance with their Local Patent Rule 3-1 obligations to disclose preliminary infringement contentions. The entirety of the disclosure was designated "confidential[1]."

---

[1] Because no Protective Order has been entered in this case, the designation was made pursuant to Patent Local Rule 2-2, which provides that "[t]he Protective Order authorized by the Northern District of California shall govern discovery unless the Court enters a different Protective Order."

1    Working from this district's Model Protective Order, the parties attempted to reach an
2 agreement on a protective order that would govern discovery in this case. They failed to agree
3 on two points. First, plaintiffs wanted to disclose defendants' Local Patent Rule 3-1 preliminary
4 infringement contentions ("PICs") to the their manufacturers and suppliers, and sought to add
5 language that would permit that. Defendants would not agree, unless plaintiffs designated them
6 as experts[2]. Second, defendants wanted to add a provision (not in the Model Order) that would
7 allow certain of their employees to have access to plaintiffs' designated "Highly Confidential"
8 information. Plaintiffs objected. The parties now bring cross-motions for an order adopting their
9 proposed form of protective order. Each side's proposed would give them what they could not
10 achieve through negotiations.

11    The matter has been fully briefed. The court held a hearing on April 14, 2009. Upon
12 consideration of the papers and arguments of counsel, the court now GRANTS IN PART
13 plaintiffs' motion, and DENIES defendants' motion.

## DISCUSSION

15    Generally, the party seeking a protective order bears the burden of showing good cause
16 for the order to issue. Fed. R. Civ. Pro. 26(c). Here, however, both parties agree to enter a
17 protective order, generally; they disagree on how much protection that order should provide to
18 defendants' PICs and to plaintiffs' highly confidential information.

19 *Should Defendants' PICs be Disclosed?*

20    Normally, PICs are produced in a "claim chart" format, where the producing party
21 indicates where and how it contends a product infringes on its patents. As described at the
22 hearing, defendants' PICs consist of 151 documents, totaling nearly 11,000 pages[3]. Nearly half
23 of these documents are what defendants call "product reviews," which compare language from
24 the patent claims with "vague descriptions and depictions of certain portions of [plaintiffs']
25 products." Plaintiffs Motion to Enter Protective Order, page 4, 1-5 (Docket No. 102). The

---

[2] The Model Order otherwise has no provision for disclosure of "confidential" information to third parties.

[3] Defendants admitted at the hearing that they may have "overdisclosed."

2

1 remaining documents consist of publicly available information about plaintiffs' allegedly
2 infringing products, taken from various websites, product user manuals, and reference manuals.
3 Defendants claim that this compilation is greater than the sum of its parts, and that while most
4 of the information is publicly available, the analysis is its confidential proprietary business
5 information. As Rumpelstiltskin spun straw into gold, so have defendants attempted to spin
6 these publicly available documents into confidential information. While defendants
7 acknowledge that the PICs do not contain trade secrets, they claim that the notes, comments and
8 conclusions they added to the publicly available documents make them worthy of protection.

9     Plaintiffs explain that because they do not manufacture the allegedly infringing
10 microprocessors, they must be allowed to discuss defendants' infringement contentions with the
11 companies that do. This, they say, is the only way that they can gain enough knowledge or
12 understanding of how the microprocessors at issue work. Defendants assert that the
13 "infringement analysis[4]" in their PICs is confidential, and should not be provided to anyone,
14 including plaintiffs' third party manufacturers and vendors of the accused microprocessors
15 (unless the manufacturers and vendors are formally retained as "experts").

16     The court views defendants' "confidential" designation with a great deal of skepticism.
17 To the court's untrained eye, the "analysis" contained in the PICs look like nothing more than
18 conclusions of the simplest kind, as obvious as "this diagram shows a microprocessor." Neither
19 party provided the court with the information it would need to determine whether defendants
20 PICs are properly designated "confidential" under the Model Order's standards[5]. Defendants
21 have not, by example, shown the court anything that looks remotely confidential or worthy of

---

[4] As the court understands it, this "analysis" consists of the small notations, comments and conclusions added at the bottom of some of the pages.

[5] Plaintiffs provided the court with Exhibit B (sealed), an "illustrative excerpt" of defendants' PICs. Naturally, defendants claim that this sample contains the fewest comments, conclusions and notations, and are not representative of the breadth of the analysis reflected in the PICs as a whole. Notably, however, defendants failed to submit a counterexample to the court that would better illustrate the amount of confidential material found in the PICs.

3

any protection[6]. At the hearing, counsel for defendants alluded to some "reverse engineering" reports, but did not provide examples. Plaintiffs may consider a motion to de-designate the PICs as confidential, but that is not the motion before the court at this time. For the time being, defendants' designation stands.

However, plaintiffs should be allowed to show the PICs to any third party manufacturer or vendor to whom disclosure is reasonably necessary for this litigation. The mechanism plaintiffs' propose is section 7.5, which provides that:

> <u>Treatment of Party or Third-Party's Own Information or Analyses of Own Information</u>**.** Nothing herein shall restrict a party with respect to the treatment and handling of its own information or of any derivatives, abstracts, briefs, memoranda, reports, analyses, summaries, characterizations or testimony that refer to a party's own information. For example, nothing herein shall restrict a party from having access to designated materials that it produced in discovery or from having access to portions of any derivatives, abstracts, briefs, memoranda, reports, analyses, summaries, characterizations or testimony that refer to the designated materials that the party has produced in discovery.  A party shall be permitted to have access to portions of any expert reports, testimony or court filings that address the party's own designated materials. A party shall be permitted to have access to portions of any expert reports, testimony or court filings that address the party's own designated materials. Similarly, nothing herein shall restrict a party from sharing with a third-party information that appears to be from or belong to that third-party or any derivatives, abstracts, briefs, memoranda, reports, analyses, summaries, characterizations or testimony that refer to that third-party's information. For example, a party may share with a third-party designated materials that appear to belong to that third party and portions of any derivatives, abstracts, briefs, memoranda, reports, analyses, summaries, characterizations or testimony that refer to the designated materials that appear to belong to that third party.  The receiving party may prepare appropriate redacted versions of materials designated under this Order that refer to a party or third-party's own information to allow a  party or third-party to have access to materials that refer to that party's own information.  Additionally, any document or information containing portions of any derivatives, abstracts, briefs, memoranda, reports, analyses, summaries, characterizations or testimony that refer to a party's or third-party's designated materials may be shown, by counsel for a party in this action, to any current employee, consultant, witness, or representative of the party or third-party that created, owns or produced the document or information so designated, during the deposition of that current employee, consultant, witness, or representative. Further, any document or information containing portions of any derivatives, abstracts, briefs, memoranda, reports, analyses, summaries, characterizations or testimony that refer to a party's or third-party's designated materials may be shown, by counsel for a party in this action, to any former employee, consultant, witness, or representative, if the document or information so designated was in existence during the period of such individual's relationship with the party or third-party that created, owned or produced the document or information so designated.

---

[6] Publicly available information is not properly considered "confidential" within the meaning of the Federal Rules. And, defendants' claim that the PICs are "confidential" does ring a bit hollow in light of the public availability of similar PICs filed by these very defendants in other lawsuits. *See* Lam Declaration in Support of Plaintiffs' Reply (C08-00882, Docket No. 103) at Exhibit A-D.

4

This 420 word paragraph is a dense thicket of complex phrases, aimed at securing the rights of third parties to see their own information, as well as any "derivative" documents based on their own information. This provision would permit disclosure of such information and its derivatives, despite the designation defendants may have placed on the documents. Defendants object to paragraph 7.5, claiming it is so complex and cumbersome that someone could use it to cause mischief–to get around the Model Protective Order's protections. While it is hard to understand just how such mischief might occur, the court rejects 7.5 in the hopes of avoiding future controversy. Section 7.2(g) of the Model Protective Order, which appears to have been slightly modified and renumbered as Section 7.3(e) of the draft Protective Order between the parties, (and which is not a subject of contention) appears to adequately address third party access to their own information. Plaintiff's motion, insofar as it seeks adoption of proposed section 7.5, is DENIED.

However, the court will give plaintiffs the immediate relief they request by requiring the addition of another category of persons that may access confidential information. *See* Decl. Of Harold Davis, Exh. A, section 7.2. The required category of people is: manufacturers, vendors, or suppliers of the component parts identified in defendants' PICs. This special category of persons shall be permitted to view a special category of "confidential" documents, namely: defendants' PICs. The parties shall draft a modified Agreement to Be Bound by the Protective Order, similar to the Model Order's Exhibit A. The Agreement should distinguish between the publicly available information in the PICs (including third parties' own information and data), and the allegedly confidential "analysis" added to the documents by defendants, or any reverse engineering reports. The court emphasizes that the only portions of the PICs that should be treated as "confidential" are what defendants crafted themselves (i.e. any reverse-engineering reports, etc.) as well as whatever works, notes, markings, highlighting, conclusions or observations they added to the documents. To this extent, plaintiffs' motion is GRANTED.

//

//

5

1     *Should Defendants be Permitted to Show Plaintiffs' "Highly Confidential" Information to Certain Employees?*

Defendants proposed form of protective order would permit certain employees to view plaintiffs' designated "highly confidential–attorneys' eyes only" information. "Highly confidential–attorneys' eyes only" is the designation used to protect "extremely sensitive" information, such as trade secrets. Defendants' proposed protective order contains section 7.3(b), which provides that:

> . . . a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY" only to the employees of the Receiving Party (as defined in this Order[7]) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order" (Exhibit A); and in addition, the employees of Alliacense who have access under this provision and have signed the "Acknowledgment and Agreement to be Bound re: Employee of Alliacense" (Exhibit B)

The Ninth Circuit has established a balancing test to use when a party seeks discovery of an opposing party's trade secrets. The test compares "the risk of inadvertent disclosure of trade secrets to a competitor, against the risk ... that protection of ... trade secrets impair[s] prosecution [of the discovering party's] claims." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992). Defendants must establish a sufficient need for plaintiffs' trade secret information, while plaintiffs must establish a sufficient risk of inadvertent disclosure.

In their papers, plaintiffs mainly object to disclosure of their highly confidential information to Mac Leckrone, head of defendant TPL's licensing program, and son of its Chairman. Plaintiffs also object to defendants disclosing their highly confidential information to "two unnamed engineers." Even after the engineers were identified (in defendants' opposition, and in defendants' own cross motion), plaintiffs assert that the employees would not be able to keep their trade secret information confidential, in light of their relationship to defendants.

---

[7] Section 2.12 defines "Employee of the Receiving Party" as "a person who is an employee of the receiving party who assists with evaluating or maintaining this litigation and who is not involved with patent prosecution or the technical research and development of products. For the avoidance of doubt, this person will not be barred from providing general business advice to the receiving party."

6

1  Defendants do not address disclosure to Mac Leckrone in their papers. In their
2 opposition and cross-motion, defendants identify the two engineers as Divya Madhyasta and
3 Torsten Partsch, employees of defendant Alliacense that conduct engineering analyses.
4 Defendants claim that these two engineers will be responsible for conducting the necessary
5 technical analysis for outside counsel in connection with this litigation. Because Madhyasta and
6 Partsch are not competitive decisionmakers, defendants claim they should be allowed to view
7 the highly confidential information under *Brown Bag.* According to defendants, these
8 employees also have technical expertise that outweighs the risk of inadvertent disclosure.
9 Indeed, Partsch and Madhyasta both submitted declarations to the court explaining that they do
10 not participate in development or products or patent prosecution or reexamination. Defendants
11 also complain that they will be prejudiced by having to spend more money on experts if the two
12 engineer employees are not permitted to view plaintiffs' highly confidential information.

13  The court will not allow disclosure of plaintiff's "highly confidential" information in a
14 vacuum. At the time of this motion's briefing, plaintiffs had not designated any document
15 "highly confidential," and defendant had not made a showing as to why it needed to show any
16 particular document to any employee. The motion deals only with generalities. The court is
17 skeptical about allowing even the most trustworthy of defendants' employees to view such
18 sensitive information. That is usually why parties retain experts. Therefore, the defendants'
19 motion is DENIED. However, this ruling is without prejudice to defendants' bringing a specific
20 request to show a particular document to an employee for a very good reason.

21  The parties are ORDERED to file a Proposed Stipulated Protective Order consistent
22 with this ruling by June 15, 2009.

24 **IT IS SO ORDERED.**

26 Dated: 5/14/09

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

7

**Notice has been electronically mailed via ECF:**

brestivo@fbm.com, calendar@fbm.com, carol.ridgeway@klgates.com, cathy.williams@klgates.com, chanell.yates@klgates.com, dleverton@whitecase.com, dmelaugh@mofo.com, eupton@whitecase.com, gohlsson@whitecase.com, harold.davis@klgates.com, hdutton@fbm.com, jas.dhillon@klgates.com, jcooper@fbm.com, jfisher@fbm.com, jlslobodin@yahoo.com, kchen@whitecase.com, mkenny@whitecase.com, mlambert@whitecase.com, mweinstein@whitecase.com, mzappas@fbm.com, patricia.wiggins@klgates.com, perry.brooks@klgates.com, pneely@whitecase.com, renterig@fbm.com, sorourke@whitecase.com, timothy.walker@klgates.com, wcoats@whitecase.com, wpemail@fbm.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.