Timothy P. Walker (SBN 105001)
timothy.walker@klgates.com
L. Howard Chen (SBN 257393)
howard.chen@klgates.com
Harold H. Davis, Jr. (SBN 235552)
harold.davis@klgates.com
Jas Dhillon (SBN 252842)
jas.dhillon@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel: (415)882-8200
Fax: (415)882-8220

Jeffrey M. Ratinoff (SBN 197241)
jeffrey.ratinoff@klgates.com
K&L GATES LLP
630 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 798-6700
Facsimile: (650) 798-6701

Attorneys for Plaintiffs ACER INC., ACER AMERICA CORPORATION and GATEWAY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACER INC., ACER AMERICA CORPORATION AND GATEWAY, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION, AND ALLIACENSE LIMITED,<br><br>Defendants.<br><br>AND RELATED CROSS ACTIONS. | Case No.: 5:08-CV-00877 JF (HRL)<br><br>**<u>DISCOVERY MATTER</u>**<br><br>**PLAINTIFFS' *EX PARTE* MOTION FOR IMMEDIATE RESOLUTION OF DISPUTE OVER TWO ALLEGEDLY PRIVILEGED DOCUMENTS**<br><br>**[F.R.Civ.P. 26(b)(5)(B); Civil L.R. 6-3; Civ. L. R. 7-10; Civ. L. R. 37-1]**<br><br>Date: November 2, 2010<br>Time: 10:00 a.m.<br>Dept: Courtroom 2, 5th Floor<br>Before: Magistrate Judge Howard Lloyd<br><br>(Requesting November 2, 2010 Hearing Date) |

**EMERGENCY *EX PARTE* RELIEF REQUESTED**

This dispute relates to whether two documents produced by a non-party, in response to a subpoena without prior objection by the subpoenaed party or any other party to this action, are privileged. Plaintiffs Acer Inc., Acer America Corporation and Gateway, Inc. (collectively "Acer") will, and hereby do move this Court *ex parte* for an immediate resolution of a dispute over two emails that Defendants Technology Properties Limited, Inc. and Alliacense, Ltd. (collectively "Defendants" or "TPL") claim are privileged but were produced by non-party Charles Moore. *See* Civil L.R. 7-10; Civil L.R. 37-1(b); Paragraph 6 of this Court's Standing Order re: Initial Case Management and Discovery Disputes. On September 30, 2010, Acer served non-party Charles Moore a document and deposition subpoena. Declaration of Jas Dhillon in Support of Plaintiffs' *Ex Parte* Motion ("Dhillon Decl."), ¶ 11. Mr. Moore complied with the subpoena by turning over responsive documents on October 15 and 18, 2010. *Id.*

Although Acer provided TPL advance notice of the document subpoena issued for non-party Charles Moore, TPL made no effort to object to the subpoena on grounds of privilege prior to Mr. Moore's compliance date. *Id.* at ¶ 12. It was not until ***after*** that date had passed and after Moore had produced documents that TPL notified Acer that it allegedly had a common interest with Moore and that two emails produced by Moore were purportedly privileged. *Id.* Despite written and oral meet-and-confer sessions, TPL has never articulated the relationship between TPL and Mr. Moore, or how such a common interest exists between these two parties. *Id.* at ¶ 19.

TPL's tardy privilege objection is improper due to a combination of Moore's failure to serve written objections to the document subpoena and TPL's failure to file a motion for protective order or motion to quash prior to October 12, 2010. Moreover, during the meet and confer process, TPL failed to provide sufficient foundational facts that would establish the existence of any privilege covering its communications with Moore had it not been otherwise waived. *Id.* Nevertheless, Acer has sequestered the two documents in question as required by FRCP 26(b)(5)(B) pending a resolution of the parties' dispute over TPL's claims of privilege. *Id.* at ¶ 20.

Mr. Moore is currently scheduled to be deposed on November 3, 2010. *Id.* at ¶ 14. With Moore's deposition less than two weeks away, good cause exists for hearing Acer's motion on an *ex parte* basis. Unless this Court immediately intervenes, TPL's improper assertion of privilege will

preclude Acer from examining Moore, the inventor of the patents-in-suit, on two critical documents. Acer also cannot afford to wait thirty-five days to have the parties' dispute resolved via a regularly notice motion since claim construction discovery will be closed and the parties will have commenced the claim construction briefing process.

Finally, Acer spent months and thousands of dollars locating and serving Moore with a deposition subpoena and simply cannot risk any further difficulties in rescheduling the deposition. *Id.* at ¶ 16. Conversely, it would be unduly burdensome to both Acer and Moore to leave the deposition open pending a ruling on the propriety of TPL's claims of privilege and then require the deposition to continue at a later date should this Court rule in Acer's favor.

This *ex parte* Motion is appropriate pursuant to FRCP 26(b)(5)(B), which provides that a party may promptly present the information claimed to be privilege by another party to the court under seal for a determination of the claim. Likewise, paragraph six of this Court's Standing Order re: Initial Case Management and Discovery Disputes provides that a party may seek emergency relief from the Court during "discovery events (such as depositions)" to address the problem pursuant to Civil L.R. 37-1(b). Pursuant to FRCP 26(b)(5)(B) and Civil L.R. 79-5, Acer has also concurrently filed an *ex parte* application to file the two documents at issue under seal for this Court to review *in camera*. Further, pursuant to Civil L.R. 6-3, the Parties have filed a Joint Motion for Order Shortening Time on Plaintiffs' *Ex Parte* Motion for Immediate Resolution of Dispute Over Two Allegedly Privileged Documents.

Acer certifies, pursuant to FRCP 37 and Civil L.R. 37(a)(1), that it has met and conferred with TPL in good faith to resolve this dispute before filing the current motion. *Id.* at ¶ 17. TPL, however, failed to provide a legal basis that no waiver of its alleged privilege occurred. *Id.* at ¶ 19. TPL also failed to provide adequate factual and legal support as to why it has the right to assert its now-waived assertion of privilege over the two documents in question, as well as a basis to object on those grounds at Moore's deposition. *Id.* Regardless, Acer provided notice to TPL of its intent to file this *ex parte* Motion on October 21, 2010. *Id.* at ¶ 23.

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I. FACTUAL BACKGROUND

## A. TPL Represents Itself to Be the Owner of the Patents-in-Suit.

Acer filed this action for a declaratory judgment of non-infringement and invalidity of United States Patent Nos. 5,809,336 ("'336 patent"); 5,440,749 ("'749 patent"); 6,598,148 ("'148 patent") and 5,530,890 ("'890 patent") (collectively "the patents-in-suit). *See* Dkt. No. 1 ("Acer's Declaratory Judgment Complaint"). Charles Moore ("Moore") is a named inventor of these patents. *Id.* At some point after these patents issued, TPL allegedly obtained ownership of the patents-in-suit. In this action and in the previously filed action in the Eastern District of Texas, TPL has represented that it co-owns the patents-in-suit with Defendant Patriot Scientific Corp. ("Patriot) and that it "has the sole and exclusive right and obligation to license and enforce" the patents-in-suit. Dkt. No. 99 at ¶¶ 9-12; *see also* Ex. 1 to Dhillon Decl., at ¶¶ 24-27.

## B. Acer Issued Document and Deposition Subpoenas to the Non-Party Inventor of the Patents-in-Suit And Provided Notice Thereof to TPL.

On May 26, 2010, Acer issued a document and deposition subpoena for Charles Moore. *See* Exh. 2 to Dhillon Decl. Acer requested that Mr. Moore produce, *inter alia*: (a) documents concerning the patents-in-suit [Request Nos. 1-7]; (b) communications between Moore and TPL concerning the patents-in-suit [Request Nos. 8-9]; (c) documents relating to the licensing, assignment, ownership of the patents-in-suit and any disputes over them [Request No. 13]; and (d) documents relating to the commercialization of the patents-in-suit [Request No. 13]. *Id.* Acer served notice and a copy of the subpoena on TPL and the other defendants on September 3, 2010. *See* Exh. 3 to Dhillon Decl.

After spending several months and thousands of dollars in investigative fees to locate Moore in the Reno/Nevada/Tahoe area, Acer issued separate testimony and document subpoenas on September 3, 2010. *Id.*; *se also* Dhillon Decl., ¶ 16. The testimony subpoena required Moore to appear for deposition in Reno on October 27, 2010. *See* Exh. 3 to Dhillon Decl. The document subpoena contained requests for production identical to those in the May 26, 2010 deposition subpoena and required Moore to produce responsive documents on September 30, 2010. *Compare* Exh. 2 *and* Exh. 3 to Dhillon Decl. Acer provided TPL and the other Defendants with notice and

copies of the subpoenas that same day. *See* Exh. 3 to Dhillon Decl.

Acer encountered additional difficulties in serving Moore prior to September 30, 2010 and thus, re-issued an identical document subpoena with a new compliance date of October 11, 2010 to ensure that Moore had sufficient time to respond and produce documents ahead of his scheduled deposition. *Compare* Exh. 3 *and* Exh. 4 to Dhillon Decl. Acer provided TPL with notice of the updated subpoena on September 29, 2010. *See* Exh. 4 to Dhillon Decl. Acer was finally able to serve Moore with the updated subpoena on September 30, 2010. Shortly after Moore was served, his attorney contacted Acer to confirm that he would produce documents and finally made two small productions, respectively, on October 15 and 18, 2010. Dhillon Decl., ¶ 11. These productions consisted of 58 printed pages of material and a CD containing a few hundred additional pages of material. *Id.* At issue in this motion is MOORE00058, an August 14, 2008 e-mail from Mr. Moore to Mr. Mac Leckrone and Mr. Larry E. Hennenman and mac336.pdf, another e-mail communication. *Id.*; *see also* Exhs. 6-7 to Dhillon Decl.

At no time prior to responding did Moore serve written objections or otherwise express any concerns regarding the subpoena calling for any privileged documents. *See* Dhillon Decl., ¶ 12. TPL did not file any objections or have any comments with respect to the subpoena to Mr. Moore. *Id.* at ¶ 13.

**C. TPL Claims That Two Emails Produced by Moore are Allegedly Subject to the "Common Interest Privilege."**

Despite having notice of Acer's document requests directed to Moore since early September 2010, TPL did not raise any objections concerning the subject matter and scope of those requests. *Id.* It was not until October 19, 2010 that TPL claimed two emails produced by Moore constituted privileged communications between TPL, Moore and TPL's attorneys, who were retained in conjunction with the aforementioned Texas action and USPTO proceedings. *Id.*; *see also* Exh. 5 to Dhillon Decl. TPL further objected to the production or use of those documents and "other similar materials" at Moore's deposition. *Id.* Although Acer disagreed with TPL's assertion, Acer immediately sequestered the two emails identified by TPL, which are concurrently filed under seal herewith, pending the Court's resolution of the parties' dispute as provided by FRCP 26(b)(5)(B). *Id.* at ¶ 20.

**D. The Parties Attempt to Informally Resolve Their Dispute.**

After receiving TPL's initial notice, the parties exchanged substantive emails outlining their respective positions. *See* Exh. 5 to Dhillon Decl. There are two primary issues that the parties disagree over: (1) whether TPL waived its right to assert any claim of privilege over the emails in question by failing to take steps to preserve an alleged privilege before Moore produced the two emails in question; and (2) if there was no such waiver, whether TPL has provided sufficient foundational facts that would establish that the communications were subject to the attorney-client privilege and the common interest exception thereto. *See* Dhillon Decl., ¶ 14. Acer asked that TPL immediately engage in a "live" discussion over the parties' respective positions to ensure that Acer had sufficient time to seek the Court's assistance prior to the deposition. *See* Exh. 5 to Dhillon Decl.

On October 22, 2010, the Parties telephonically met and conferred on the above issues. *See* Dhillon Decl., ¶ 18. During the meet and confer, TPL informed Acer that Mr. Moore had "agreements" with TPL in or around August 2008. *Id.* Further, counsel for TPL informed Acer that it did not understand the nature and scope of the agreements between Mr. Moore and TPL but instead, was going off of what TPL told counsel. *Id.* Specifically, counsel for TPL mentioned that TPL did not identify the type of agreements it had with Mr. Moore. *Id.* Without an opportunity to review the agreements, Acer was unable to determine the relationship between TPL and Mr. Moore. *Id.*

Counsel for TPL also claimed the two documents at issue were privileged under the common-interest doctrine based on Mr. Moore's commercial interest in the enforcement of the patents. *Id.* at ¶ 21. Acer disagreed and explained that the courts have held that such interests are insufficient to constitute a legal interest relating to the patents-in-suit sufficient to find a common interest privilege. *Id.* Plaintiffs' certify, pursuant to FRCP 37 and Civil L.R. 37(a)(1), that it has met and conferred with TPL in good faith in an effort to resolve this dispute before filing its Motion. *Id.* at ¶ 17. Despite these good faith efforts, the parties were unable to reach an agreement and have thus, reached an impasse. *Id.* at ¶ 22.

## II. LEGAL ARGUMENT

### A. TPL Waived its Privilege Claims by Failing to Seek a Protective Order or an Order Quashing the Moore Document Subpoena.

TPL claims that it had no obligation to move to quash the subpoena or for a protective order prior to production of the emails in order to preserve any claim of privilege that it may have over them. *See* Exh. 5 to Dhillon Decl. TPL's assertion is contradicted by the well established requirements of Federal Rules of Civil Procedure 26 and 45.

While a nonparty may challenge a document subpoena on the grounds of privilege via written objection, a party such as TPL may only challenge the subpoena by moving to quash or modify the subpoena pursuant to FRCP 45(c)(3)(A), or by moving for a protective order pursuant to FRCP 26(c). *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *accord Anderson v. Abercrombie and Fitch Stores, Inc.*, 2007 WL 1994059, *2 (S.D. Cal. July 02, 2007) (citing same). In this regard, "[t]o excuse compliance, a motion to quash must be made ***before*** the production or deposition date identified in the subpoena." *Anderson*, 2007 WL 1994059, *8 (denying motion to quash filed after the production date as untimely) (emphasis added); 2 W. Schwarzer *et al.*, *Federal Civil Procedure Before Trial* § 11:2288 (Rutter Group 2010) (motion to quash or modify "must be made ***promptly*** . . . because it must be heard and granted before the scheduled deposition") (emphasis in original). Here, TPL failed to file such a motion before the date upon which Moore was required to comply with the subpoena thereby waiving any claim of privilege over Moore's productions. Dhillon Decl., ¶¶ 12-13. Accordingly, TPL's attempt to preclude Acer from using the two emails in question on the grounds of privilege is futile.

Notwithstanding this fact, TPL has also taken the position that no waiver occurred because "TPL was not privy to Mr. Moore's planned production and could not have anticipated that he would produce these privileged documents in response to Acer's requests." Exh. 5 to Dhillon Decl. TPL's failure to communicate with Moore about the document production, however, is inconsequential. TPL had actual notice that the subpoena sought communications between Moore and TPL regarding the patents at least as early as September 3, 2010. *See* Exh. 3 to Dhillon Decl. (Request No. 8). Likewise, by its own admissions TPL knew (or should have known) that TPL and Moore had communicated regarding the patents-in-suit during the Texas lawsuit and during reexamination.

Consequently, the onus was squarely on TPL to either communicate with Moore concerning any privilege issues, or as expressly provided by Rule 45, to diligently seek a protective order to ensure that Moore did not produce any alleged privileged documents.

Finally, TPL claims because the document subpoena instructed Moore to provide a privilege log for any documents withheld by him on the grounds of privilege, TPL had no obligation to move to quash the subpoena or for a protective order. However, the fact that the subpoena calls for the production of a privilege log does not save TPL from waiver. In order to rely upon a privilege log, Moore and TPL would have had to ***timely*** challenge the subpoena based on privilege ***before*** Moore complied with the subpoena. *See* 2 W. Schwarzer *et al.*, *supra,* § 11:2287 ("[a] motion to quash or for a protective order is the only way for a party to prevent disclosure where the subpoenaed witness is otherwise willing to produce the records voluntarily"); *see also id*, § 11:2291 ("failure to serve timely objections waives all grounds for objection, ***including privilege***") (emphasis in original); *accord Moon*, 232 F.R.D. at 636 ("a nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived") (citing same). Since neither TPL nor Moore did so, it is unnecessary for this Court to determine whether TPL's claim of privilege is warranted and thus, should allow Acer to use the two emails in dispute during Moore's upcoming deposition.

**B. TPL Cannot Establish That The Communications At Issue Are Privileged.**

Even if TPL had timely filed a motion to preserve its privilege claims, it has failed to establish that the documents in question are privileged. After pressing TPL to explain the factual basis of the privileged documents during the meet and confer process, TPL provided an *ex post facto* privilege log describing the first document at issue, "mac336", as a August 14, 2008 email entitled "336 re-exam interview summary" that was sent from Mac Leckrone of TPL to Dan Leckrone of TPL; Larry Henneman of Gray Plant Mooty; and Roger Cook, George Yee, Rodney LeRoy, Alan Minsk, and Ko-Fang Chang of the Townsend firm. Exhs. 5-7 to Dhillon Decl. TPL further acknowledged that Mr. Moore was copied and explained that the email relates to an "interview" of Mr. Moore and the interpretation of certain language in the then-ongoing re-examination of the '336 patent. Exh. 5 to Dhillon Decl. TPL described the second email, "Moore0058" as an August 14, 2008 email from the same email thread, which was sent by Mr. Moore to the same group of recipients relating to the same

subject matter as "mac336." *Id.*

TPL admitted that Mr. Henneman and Townsend ***were retained by TPL*** (not by Moore) to provide legal advice on the '336 patent, including issues arising out of its re-examination and the lawsuit pending in Texas. Exh. 5 to Dhillon Decl. TPL claimed that Moore was an "exclusive licensee," and without providing any details regarding that legal relationship or the terms of license, concluded that Moore had a common interest in the re-examination of the '336 patent or the then-pending Texas litigation. *Id.*

TPL's vague explanation, however, falls well short of explaining how an interview of a non-party inventor would be subject to the attorney-client privilege - the establishment of which is a prerequisite relying on the common interest doctrine. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (the common interest doctrine is not a separate privilege, but an anti-waiver exception and "comes into play only if the communication at issue is privileged in the first instance"); *see also U.S. v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003). To invoke the common interest exception, TPL was required to establish: (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Bergonzi*, 216 F.R.D. at 495. The common interest must be a legal one, "and the communication must be designed to further that specific legal interest." *Nidec*, 249 F.R.D. at 579-80. The doctrine does not protect communications made in furtherance of a common business or commercial interest. *Lenz v. Universal Music Corp.*, 2009 WL 3573990 (N.D. Cal. 2009)(J. Fogel); *Nidec,* 249 F.R.D. at 578; *Bank Brussels Lambert v. Credit Lyonnaise (Suisse) S.A.,* 160 F.R.D. 437, 448 (S.D.N.Y.1995)(common interest privilege does not protect communications made in furtherance of a common business interest.); *see also Bank of America, N.A. v. Terra Nova Insurance Co.*, 211 F. Supp. 2d 493, 496 (S.D.N.Y. 2002)(the shared interest must be legal rather than commercial and identical rather than merely similar); *Johnson Matthey, Inc. v. Research Corp.*, 2002 U.S. Dist. LEXIS 13560,*6 (S.D.N.Y. July 24, 2002)(same); *In re FTC*, 2001 U.S. Dist. LEXIS 5059, *2 (S.D.N.Y. April 19, 2001)(same).

Here, there is no joint defense agreement nor any evidence that TPL and the attorneys in the two emails at issue represented Moore's interests or asserted any claims on Moore's behalf. When asked, TPL was unable to present any evidence that TPL and Mr. Moore had ever entered into any

common interest agreement. Dhillon Decl., ¶¶ 18-19.

To the contrary, TPL alleged in the Texas action that "TPL is an owner of the right, title and interest to the '148 patent, the '336 patent, and the '584 patent [], has the exclusive right to enforce and license the patents-in-suit, and has standing to sue." Exh. 1 to Dhillon Decl., ¶¶24-27. TPL also confirmed during the meet and confer process that the attorneys were representing ***TPL*** in the reexamination proceedings and the Texas action as the owner of the patents. Exh. 5 to Dhillon Decl. Thus, it appears that those attorneys were merely interviewing him as a third-party percipient witness to further TPL's interests in those proceedings. Accordingly, Moore's participation destroyed any claim of privilege by TPL over those communications. *In re FTC*, 2001 U.S. Dist. LEXIS 5059, *7-8 (general rule is that attorney-client privilege is waived when confidential information is communicated to a third party).

Moreover, simply because Moore was an inventor of the patents-in-suit, which TPL claims to own, does not automatically make TPL's communications with him privileged. *See, e.g., GP Industries, LLC v. Bachman*, 2008 WL 4279739 *5-8 (D. Neb. Sep 16, 2008) (rejecting patent owner's claim that common interest relating to the validity and enforcement of a patent prevented disclosure of communications and documents regarding an infringement analysis exchanged between the patent owner and the inventor that assigned the patent and received royalty payments). Likewise, the fact that Moore assigned the patent to TPL and received a license back where he may have been entitled to royalties does not cloak his communications with the TPL attorneys.[1] *See Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 1728566, *6-7 (S.D.N.Y. July 24, 2002) (where a party has given up its rights in a patent, "the shared desire to maximize royalty income is . . . simply a commercial concern" and does not "rise to the level of a common legal interest"); *accord Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 472-73 (S.D.N.Y. 2003) (a shared desire to reach a favorable outcome in the litigation is insufficient to invoke the common interest

---

[1] During the meet and confer process, TPL cited *In re Regents of the Univ. of California*, 101 F.3d 1386 (Fed.Cir.1996). TPL's reliance on the *Regents* case is misplaced. *Regents* did not involve an inventor who had ***assigned ownership*** of a patent to another party seeking to enforce that patent. *Regents* is distinguishable from this case as *Regents* involved the prosecution of a patent rather than the enforcement of one where the same attorneys effectively represented the patentee and an optionee/potential licensee during the prosecution of the patent.

rule). Thus, it is unclear what legal interest Moore has as a purported "licensee" since TPL seems to retain all substantive rights to the patents-in-suit.

Further, Acer will be prejudiced if these documents are withheld. The emails at issue are relevant communications related to important factual and legal issues in this case. Thus, the documents and respective information are likely to lead to admissible evidence on issues of claim construction and non-infringement. For example, Moore is the inventor of the patents-in-suit and his impressions and analysis of the patents-in-suit would allow Acer, through deposition, to gain additional information regarding the nature, scope, and enforceability of the patents-in-suit with respect to any accused Acer products.

Finally, there have been multiple disputes over the ownership of the patents-in-suit. The most recent one is a lawsuit for fraud, breach of fiduciary duty, and breach of contract filed by Moore on September 27, 2010 against TPL wherein he alleges that TPL has fraudulently obtained ownership of the patents and failed to pay royalties due and owing to Moore. *See* Exh. 8 to Dhillon Decl. The striking allegations in the suit raise further doubt over whether TPL ever shared a common interest with Moore. *Id.* Accordingly, TPL has not and cannot establish that the common interest doctrine covers the two emails in question.

## III. CONCLUSION

For the foregoing reasons, Acer respectfully requests that the Court grant its Motion and permits Acer to use the two emails at Moore's deposition and question him on the matters discussed in those emails.

K&L GATES LLP

Dated: October 22, 2010

By: */s/* Jas Dhillon
Timothy P. Walker
L. Howard Chen
Harold H. Davis, Jr.
Jeffrey M. Ratinoff
Jas Dhillon

Attorneys for Plaintiffs ACER INC., ACER AMERICA CORPORATION and GATEWAY, INC.