**\*\* E-filed November 19, 2010 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACER INC. et al, | No. C08-00877 JF (HRL) |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION AND ENTERING PROTECTIVE ORDER** |
| v. | |
| TECHNOLOGY PROPERTIES LTD., et al, | **[Re: Docket No. 195]** |
| Defendants. | |

## BACKGROUND

Plaintiffs Acer, Inc., Acer American, Corp., and Gateway, Inc. (collectively, "Plaintiffs") filed this action against defendant Technology Properties Limited ("TPL") and others for declaratory judgment of non-infringement and invalidity of, among others, United States Patent No. 5,809,336 (the "'336 patent"). Non-party Charles Moore ("Moore") is a named inventor of the '336 patent. In 2002, Moore executed a commercialization agreement with TPL which granted TPL co-ownership (along with Moore) of the '336 patent and obligated Moore to support the commercialization activities of TPL. (Docket No. 205 ("Supp. Leckrone Decl."), Ex. 2.)

In conjunction with his obligations under the commercialization agreement, Moore was orally appointed as Chief Technology officer ("CTO") of IntellaSys, a TPL-related enterprise in the fall of 2005. (Docket No. 208 ("Leckrone Decl."), ¶ 3; Docket No. 206 ("Moore Decl."), ¶¶ 5-6.) He later became the CTO of TPL when IntellaSys was merged into TPL in September 2006.

1   (Leckrone Decl., ¶ 3; Moore Decl., ¶¶ 5-7.)  Moore was the CTO of TPL from September 2006 to
2   January 2009.  (Leckrone Decl., ¶ 3; Moore Decl., ¶¶ 5-7.)

3   From 2006 to 2009, the USPTO conducted three reexamination proceedings of the '336
4   patent.  As part of these proceedings, Moore, then TPL's CTO[1], was interviewed by the United
5   States Patent and Trademark Office ("USPTO") in August 2008.  (Leckrone Decl., ¶ 4; Moore
6   Decl., ¶¶ 7-8.)  Shortly thereafter, emails discussing the interview were sent among TPL executives
7   Dan Leckrone, Mac Leckrone, Larry Henneman (a TPL-retained patent attorney at Henneman &
8   Associates, PLC), George Yee (a TPL-retained patent attorney at Townsend and Townsend and
9   Crew LLP ("Townsend")), other Townsend attorneys, and Moore.  (Docket No. 195-2 ("Dhillon
10  Decl.,"), Exs. 6, 7.)  In one email (file name "mac336.htm"), Yee, Henneman, and Mac Leckrone
11  discuss the attorneys' impressions of the interview and their conclusions about the patentability of
12  the '336 patent's claims.  (Dhillon Decl., Ex. 6.)  In a second email (Bates-stamped "Moore0058"),
13  Moore responds to the others' questions and comments.  (Dhillon Decl., Ex. 7.)

14  Much more recently, Plaintiffs served Moore with a document and deposition subpoena on
15  September 30, 2010.  Plaintiffs provided TPL with a copy of the subpoena, so it was on notice of the
16  documents sought.  Moore produced responsive documents on October 15 and 18.  Inadvertently
17  included within these productions were the two emails discussing Moore's interview with the
18  USPTO.[2]

19  Although Plaintiffs provided TPL with advance notice of the subpoena to Moore, TPL did
20  not object to it or move to quash the subpoena or for a protective order.  In fact, TPL did not do
21  anything until October 19 — the day after Moore finished producing the documents — when, after

---

[1] Moore states in his declaration that "[i]n or about August 2008, while I served as Chief Technology Officer of Intellasys and TPL, one or more of the MMP portfolio patents was the subject of a patent reexamination procedure before the United States Patent and Trademark Office (the 'PTO')." (Moore Decl., ¶ 6.)

[2] Moore states that he "inadvertently included, among the documents and materials I gave to [his counsel], an August 14, 2008 memorandum I sent to the TPL Reexamination Attorneys.  My memorandum, which bears the Bates stamp Number 'MOORE0058,' was an attorney-client privileged response to a request for information from the TPL Reexamination Attorneys.  As such, the memorandum was a privileged documents that should not have been produced in the present litigation, but should have been listed as attorney-client privileged and withheld from production." (Moore Decl., ¶ 13.)  He goes on: "Similarly, a digitally stored file known as 'MAC336.htm,' was also inadvertently produced, despite it being a privileged communication by and between the TPL Reexamination Attorneys and TPL in connection with the then-ongoing PTO reexamination process." (Moore Decl., ¶ 14.)

reviewing Moore's production, it notified Plaintiffs via email that the "mac336.htm" and "Moore0058" emails are privileged.

Plaintiffs filed the instant motion for the immediate resolution of the parties' dispute over whether these two emails are protected by the attorney-client privilege. (Docket No. 195 ("Motion").) TPL filed its opposition brief on October 28 (Docket No. 200 (Opp'n")), and the oral argument was heard on November 2. Plaintiffs have sequestered the two documents in question as required by Rule 26(b)(5)(B) pending this Court's resolution of the dispute.

## DISCUSSION

### A. The Emails Are Privileged

Despite Plaintiffs' doubt, the two emails in question, "mac336.htm" and "Moore0058," are protected by the attorney- privilege. "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Genentech, Inc. v. U.S. Intern. Trade Com'n.*, 122 F.3d 1409, 1415 (Fed. Cir. 1997) (citing *American Standard Inc. v. Pfizer Inc*., 828 F.2d 734, 745 (Fed.Cir. 1987)). Here, TPL hired attorneys Henneman and Yee (along with the other Townsend attorneys) in relation to the '336 patent reexamination proceedings before the USPTO. Moore, Daniel Leckrone, and Max Leckrone were all executives of TPL in August 2008. As the emails at issue describe confidential conversations between only TPL executives (including Moore) and TPL's attorneys about Moore's USPTO interview in relation to the '336 patent reexamination, these emails are clearly protected by the attorney-client privilege.

### B. Whether the Emails Should Nevertheless Be Produced

Plaintiffs contend that even if the two emails are privileged (which they are), TPL waived its right to assert the attorney-client privilege. It argues that "[w]hile a nonparty may challenge a document subpoena on the grounds of privilege via written objection, a party such as TPL may only challenge the subpoena by moving to quash or modify the subpoena pursuant to FRCP 45(c)(3)(A), or by moving for a protective order pursuant to FRCP 26(c)." (Motion at 6.) Indeed, under Rule 45, a nonparty served with a subpoena may make objections within 14 days after service, or before the time for compliance if it is less than 14 days. FED. R. CIV. P. 45(c)(2)(B). "Only the witness can

prevent disclosure by objection. The party to whom the subpoenaed records pertain *cannot* simply object. Rather, a protective order or motion to quash the subpoena is required." SCHWARZER, ET AL., CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL, § 11:2291 (The Rutter Group 2010) (emphasis in original). Thus, Plaintiffs argue that "the onus was squarely on TPL to either communicate with Moore concerning any privilege issues, or as expressly provided by Rule 45, to diligently seek a protective order to ensure that Moore did not produce any alleged privileged documents." (Motion at 7.) They say that TPL failed to file such a motion before the date upon which Moore was required to comply with the subpoena, thereby waiving any claim of privilege over Moore's production. (*Id*. at 6.)

TPL does not agree. It contends that it was not on notice that privileged documents might be produced. This was so, it says, for several reasons, namely: (1) Moore was no longer affiliated with TPL; (2) per TPL's Policy on Use of Electronic Communications, Moore was expected to have returned to TPL all of its material upon his 2009 departure; and (3) Moore was barred from producing any privileged materials without TPL's express consent pursuant to the commercialization agreement. (Opp'n at 3, 8.) Under these circumstances, it had no basis to move to quash the subpoena prior to production. (*Id*. at 8.)

TPL also argues that FRCP 45 allows for the post-production assertion of the attorney-client privilege and does not require that a party so asserting have previously objected or moved to quash on privilege grounds. (*Id*. at 9.) It cites FRCP 45(d)(2)(B), which provides that "[i]f any information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it," whereupon any dispute over the information can be resolved by a court.

While "a nonparty's failure to timely make objections to a Rule 45 subpoena generally requires the court to find that any objections have been waived, . . . '[i]n unusual circumstances and for good cause, . . . the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena].' Courts have found unusual circumstances where, for instance, the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-

4

party acting in good faith." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (internal citations omitted).  Here, the subpoena served upon Moore does not appear to be overly broad or exceed to bounds of fair discovery, and neither Moore nor TPL have made such a claim. *See* Dhillon Decl., Ex. 4.  The Court, therefore, does not believe that "unusual circumstances" exception applies.

However, "under Rule 26(c), the Court may *sua sponte* grant a protective order for good cause shown." *McCoy v. Southwest Airlines Co., Inc*., 211 F.R.D. 381, 385 (C.D. Cal. 2002); *see also*, *Coleman v. Schwarzenegger*, Nos. CIV S-90-0520 LKK JFM P, C01-1351 THE, 2007 WL 4276554, at *1 (E.D. Cal. Nov. 29, 2007) ("Under Federal Rule of Civil Procedure 26(c), and in the inherent discretion of a court to manage its own discovery, a court may sua sponte enter a protective order for good cause shown.  A protective order may include an order that "discovery not be had.") (internal citations omitted); *Lesal Interiors, Inc. v. Resolution Trust Corp*., 153 F.R.D. 552, 558 n.4 (D.N.J. 1994) ("[U]nder Fed.R.Civ.P. 26(c), and the discretion allocated this court in the management of discovery generally, where a court determined to deny a motion to compel, it may, if circumstances so justify, enter a protective order *sua sponte.* The converse is likewise a possibility.").

In *McCo*y, for example, the court dealt with a similar situation to the one here.  In that case, the plaintiffs served a Rule 45 subpoena on a nonparty for documents concerning the defendants. *McCoy*, 211 F.R.D. at 383.  Although the defendants objected, they did not move to quash the subpoena or for a protective order, and the nonparty produced documents without objecting at all. *Id*.  The court acknowledged that (1) the defendants cannot object to a subpoena directed to a nonparty, (2) a nonparty's failure to object normally requires the court to find that any objection, including those related to privilege, has been waived, and (3) the subpoena at issue was not overbroad and so the "unusual circumstances" exception did not apply. *Id*. at 385.  Instead, the court relied upon Rule 26 and its discretion to consider *sua sponte* granting a protective order. *Id*. After determining that the documents at issue were <u>not</u> privileged (as the defendants had claimed they were), the court decided not to enter a protective order and granted the plaintiffs' motion to compel. *Id*. at 386-88.

But here, the emails <u>are</u> privileged. Given TPL's prompt assertion of the attorney-client privilege once it saw the documents Moore produced and this Court's preference for decisions based on the merits rather than on procedural missteps, the Court believes that good cause has been shown for its *sua sponte* entry of a protective order requiring Plaintiffs to either destroy or return to Moore any copies of the privileged emails they have sequestered.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion is DENIED. Plaintiffs shall either destroy or return to Moore any and all copies of the two emails at issue ("mac336.htm" and "Moore0058") within 5 days from the date of this order.

**IT IS SO ORDERED.**

Dated: November 19, 2010



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

6

**C08-00877 JF (HRL) Notice will be electronically mailed to:**

| Name | Email(s) |
|---|---|
| Eugene Y. Mar | emar@fbm.com, calendar@fbm.com, mclaros@fbm.com |
| Harold H. Davis , Jr | harold.davis@klgates.com, cathy.williams@klgates.com |
| Jas S Dhillon | jas.dhillon@klgates.com, cathy.williams@klgates.com, james.boston@klgates.com |
| Jeffrey M. Fisher | jfisher@fbm.com, calendar@fbm.com, renterig@fbm.com, wpemail@fbm.com |
| Jeffrey Michael Ratinoff | jeffrey.ratinoff@klgates.com, jennifer.johnson@klgates.com, jennifer.smith@klgates.com |
| John L. Cooper | jcooper@fbm.com, brestivo@fbm.com, calendar@fbm.com |
| Kyle Dakai Chen | kyle.chen@cooley.com, jmcintosh@cooley.com, lfass@cooley.com |
| Mark R. Weinstein | mweinstein@cooley.com, lfass@cooley.com, mkenny@cooley.com |
| Nan E. Joesten | njoesten@fbm.com, calendar@fbm.com, llaflamme@fbm.com |
| Paul A. Alsdorf | palsdorf@fbm.com, jyunzal@fbm.com |
| Samuel Citron O'Rourke | sorourke@facebook.com |
| Stephanie Powers Skaff | sskaff@fbm.com, bwestburg@fbm.com, calendar@fbm.com |
| Timothy Paar Walker | timothy.walker@klgates.com, carol.ridgeway@klgates.com, perry.brooks@klgates.com |
| William Sloan Coats , III | william.coats@kayescholer.com, ervin.upton@kayescholer.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**